# IN THE COURT OF APPEALS OF IOWA

No. 16-1245
Filed September 14, 2016

**IN THE INTEREST OF D.M.,**
**Minor Child,**

**D.H., Mother,**
    Appellant.
_____

    Appeal from the Iowa District Court for Linn County, Susan Flaherty, Associate Juvenile Judge.

    A mother appeals from the order terminating her parental rights. **AFFIRMED.**

    Mark D. Fisher of Nidey, Erdahl, Tindal & Fisher, P.L.C., Cedar Rapids, for appellant mother.

    Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

    Kimberly A. Opatz of Linn County Advocate, Cedar Rapids, for minor child.

    Considered by Danilson, C.J., and Mullins and Bower, JJ.

**DANILSON, Chief Judge.**

A mother appeals from the termination of her parental rights to her child, D.M., pursuant to Iowa Code section 232.116(1)(f) (2015).[1] The mother contends the juvenile court improperly found grounds for termination, should have granted the mother additional time to work toward reunification, and erred in admitting an exhibit containing the results of a drug test completed as part of criminal proceedings in another state. Because the mother exhibits improvement only when faced with impending termination, has had over two years to redirect her life, and issues regarding her substance abuse and decision-making remain, we affirm the termination of the mother's parental rights.

**I. Background Facts and Proceedings.**

D.M. first came to the attention to the department of human services (DHS) in late 2013 when allegations arose that the mother was using marijuana while caring for D.M. DHS discovered the mother was not acting as D.M.'s primary caregiver and often left D.M. in the care of his grandparents.

D.M. was first removed from the mother's care on January 23, 2014, and remained out of her custody for approximately eighteen months. After the court directed the State to file a petition for termination in February 2015, the mother began making serious efforts toward improvement. Due to the mother's progress, D.M. was placed in her care for trial home placement on June 5, 2015, and on July 15, 2015, legal custody was returned.

---

[1] The father's parental rights were also terminated after he consented to termination pursuant to the ground alleged in the petition. He does not appeal.

However, shortly thereafter on August 10, 2015, the mother was arrested outside her home on charges of operating while intoxicated and assault. Because the mother informed DHS that D.M. was not in her care at the time of the incident, D.M. was not removed from her custody. DHS later learned the mother had been untruthful: D.M. was in her care prior to and during the time of the arrest. In early November 2015, the mother was again arrested, this time in Wisconsin, on a charge of possession of methamphetamine. D.M. was subsequently removed from the mother's custody on November 5, 2015.

After the second removal of D.M., the mother again struggled to make progress and meet DHS expectations. Three patch tests completed by the mother on March 18, 25, and April 11, 2016, showed positive results for methamphetamine. Despite the methamphetamine charge in Wisconsin and the three positive patch tests, the mother did not admit to using methamphetamine until shortly before the termination hearing. The mother contends she used methamphetamine on only one occasion in November 2015 and offers no credible explanation for the positive test results.

After the termination petition was filed on May 9, 2016, the mother again began making efforts toward reunification. By the time of the termination hearing on July 8, 2016, the mother had completed intensive outpatient substance-abuse treatment and was on course to complete extended outpatient substance-abuse treatment. She was participating in drug testing, working to resolve her criminal charges, and attending and interacting appropriately with D.M. at semi-supervised visits twice a week. However, despite stating at a family team

meeting on July 6, 2016, that she had no alcohol in her home, multiple bottles of alcohol were found in the mother's kitchen during a visit later that same day.

During the July 8, 2016 termination hearing, the mother argued grounds for termination did not exist and requested additional time to achieve reunification. At the close of evidence, the court entered an immediate verbal order granting the petition for termination. The court also entered a written ruling incorporating the court's findings on the record on July 8, 2016. The court denied the mother's request for additional time and terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f). The mother now appeals.

## II. Standard of Review.

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). As to the juvenile court's rulings concerning the admission of evidence, our review is for an abuse of discretion. *In re E.H. III*, 578 N.W.2d 243, 245 (Iowa 1998).

## III. Analysis.

Our review of termination of parental rights under Iowa Code chapter 232 requires a three-step analysis. *D.W.*, 791 N.W.2d at 706.

> First, the court must determine if a ground for termination under section 232.116(1) has been established. If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights. Third, if the statutory best-interest framework supports termination of parental rights, the court must consider if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights.

*Id.* at 706-07 (citations omitted).

*A. Grounds for Termination.* Iowa Code section 232.116(1)(f) allows for termination where the child is four years of age or older, has been adjudicated a child in need of assistance (CINA), has been removed from the parent's physical care for at least twelve of the last eighteen months, and there is clear and convincing evidence the child cannot be returned to the parent's custody at present. The mother only contests the juvenile court's finding that D.M. could not be returned to the mother's care. In reaching that conclusion, the court noted, "[The mother] has inconsistently participated in the offered services and has had periods of improvement in some areas, but has been unable to demonstrate sustained progress in the areas of use of substances, improved judgment, and the ability to maintain a safe environment for a child." The court then found:

> If returned to the custody of his mother, [D.M.] would be subject to adjudicatory harms due to his mother's continued poor decision making, her substance abuse and resulting incidents of unsafe supervision, unsafe associates and unsafe situations. . . . If returned to the custody of [the mother], [D.M.] would continue to remain a child in need of assistance.

On our de novo review, we agree grounds for termination under section 232.116(1)(f) have been established. Although the mother made progress in the few months prior to the termination hearing, she continued to exhibit an inability to be truthful as recently as two days prior to the hearing. The mother also had not shown full accountability for her substance abuse issues, arguing she had not used methamphetamine despite positive drug tests to the contrary. Additionally, the mother had a ninety-day sentence remaining to be served on the methamphetamine charge and did not express a clear plan as to D.M.'s care

while incarcerated. The mother has not shown the sustained progress necessary to allow D.M. to be returned to her care without the threat that he would remain a CINA.

*B. Best Interests.* In addition to finding grounds for termination under section 232.116(1), we must also determine termination is in D.M.'s best interests. *See* Iowa Code § 232.116(2) ("[T]he court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.").

At the time of the termination hearing, D.M.'s CINA case had been pending for approximately two and a half years—more than half of D.M.'s life. The DHS case manager and the mother both testified that D.M. is suffering from the confusion of not knowing where he will live long-term. Additionally, D.M. is doing well in foster-family-care placement with relatives of the mother, and the foster family expressed an intention to adopt D.M. upon termination of the mother's parental rights. The foster family intends to encourage a continuing relationship between D.M. and his parents within monitored boundaries.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). After more than two years of uncertainty, it is in D.M.'s best interests to terminate the mother's parental rights to allow D.M. to achieve permanency. We agree with the juvenile court that D.M.'s "safety,

health, and welfare can best be ensured by continued placement in foster family care until an adoptive placement is made."

*C. Exceptions.* The mother contends the court should not terminate her parental rights because, due to the closeness of the parent-child relationship, termination would be detrimental to D.M. *See* Iowa Code § 232.116(3)(c). However, we do not find the strength of the parent-child bond outweighs D.M.'s best interests and urgent need for permanency. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."). Further, D.M.'s placement with relatives will ensure a continuing relationship with the mother with appropriate supervision and within healthy bounds. We find the closeness of the parent-child bond does not serve to preclude termination of the mother's parental rights.

*D. Request for Additional Time.* The mother also asserts the juvenile court should have awarded her additional time to achieve reunification. In its remarks at the close of the termination hearing the court explained its reasoning in refusing to grant additional time:

> We try to preserve parental rights and get kids back to the parents, but we can't keep working on this plan and keep [D.M.]'s life on hold endlessly. Right? We need to put a time limit on things. And you have actually been given a lot more time than most folks. When [D.M.] first came into the system he was less than two, . . . [D.M.] has spent a lot of his life outside of your care. And while I think you have made some progress, I don't think that I could say today that I could return him to your care now or in the . . . near future without him continuing to be at the same risk of harm he was at when he was removed. And I also can't find at this time that it would be in his best interest to continue to extend the time, because, again, we have given you a lot of time here to work on these issues.

We agree that the mother has been given more than enough time to meet DHS expectations and achieve reunification. The mother's progress has been shown to be akin to "one step forward and two steps back," with the steps forward occurring only under the threat of termination. D.M. "simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *A.B.*, 815 N.W.2d at 777 (quoting *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990)). We find the juvenile court did not improperly deny the mother's request for additional time.

*E. Exhibit 61.* Last, the mother argues the court erred in admitting Exhibit 61, a report containing the results from a drug test completed in relation to her criminal charges in Wisconsin. The attorney for the mother objected to admission of the exhibit on the basis of hearsay and unfair prejudice. However, even assuming the court abused its discretion in admitting Exhibit 61, any error was harmless because on our de novo review we have determined grounds for termination are established without consideration of the exhibit in question. *See In re T.M.*, No. 06-0124, 2006 WL 782836, at *2 (Iowa Ct. App. Mar. 29, 2006).

**IV. Conclusion.**

Because grounds for termination have been established, termination is in D.M.'s best interests, no exception applies to preclude termination, and the court's refusal to grant the mother additional time was not improper, we affirm the termination of the mother's parental rights.

**AFFIRMED.**